May it please the Court. My name is Barbara Creel. I represent Mr. Duet Hung Lee, the petitioner-appellant in this case. I'd like to reserve two minutes for rebuttal, if I may. Mr. Lee's case is another in a line of cases over time in which the Oregon Board of Parole has retroactively applied a version of a parole statute enacted after Mr. Lee's crimes were committed. Why do you, I find these cases very confusing. Why do you think they, they said they didn't do that. They may have done whatever they did do, right or wrong, but from whence would you get the idea that they applied to wrong standards as opposed to applying the right standards wrongly? As this Court found in Brown v. Palmatier, there's no question that the Oregon statute that's being applied here in Mr. Lee's case changed in 1993. Okay. Even though they said they applied the old one, it is clear from the record that they didn't. They just put that in their orders and then repeated it. And the reason I say it's clear is because, as in Brown, under the old, the former statute, Mr. Lee would have been released because he received a diagnosis of no mental or emotional disorder. Two, the board psychologist wrote to the new standard. If you look, ER 11, the board psychologist used the newly enacted standard. The old standard required, if a psychiatric or psychological diagnosis of a present severe emotional disturbance, such as to constitute a danger to the health or safety of the community, has been made with respect to the prisoner, the board may postpone parole. The new standard said, if the board finds that the prisoner has a mental or emotional disturbance, deficiency, condition, or disorder predisposing the prisoner to the commission of a crime to a degree rendering prisoner a danger to the health or safety of the community, the board may order postponement. This is in Brown 379 F. 3rd at 1091. Isn't the real difference between the two is that one just requires the board to find it, whereas the earlier one required to be a diagnosis of a status of a psychologist? That's one of the changes. The board was given this expanded authority to disregard a diagnosis, but also the present severe requirement was eliminated, thus giving the board broader discretion. But the psychologist used the old standard. Where is that? If I may. ER 11, based on this information, beginning of the paragraph, Mr. Lee continues to present with a severe personality disorder predisposing him to the commission of a crime to a degree rendering him a danger to the safety and welfare of the community. That is the exact language from the new statute. But hasn't the old statute been interpreted such that if there is a diagnosis of the appropriate kind, the board then has the ultimate authority as to the decision. As to whether the statutory standard is met. Which I gather means, although it's confusing again, that if the psychiatrist finds, as he arguably did not here, suppose the psychiatrist said that he did have an emotional disturbance, but still applied this, left out the severe part. The board at that point, as I understand it, under the law concerning the old statute could say, we find that he is a severe danger. I believe Your Honor is talking about the Widener case that was adopted, Merrill case that was adopted by Widener or vice versa. In that case, the Oregon courts didn't even recognize the ex post facto problem or address it, but instead said the board always had the authority. And that's the case that the state relies on. That was already taken care of in Brown. In Brown, this court found that a diagnosis was still required. I understand that. But what I was trying to be clear about is a diagnosis is required, but on the severe danger point, the board seems to have more authority. Yes. Under the old statute. Yes. It was completely expanded for this. Now, I don't mean expanded. I mean that Widener were construed under the old statute as having that authority. That's the way it was interpreted. Right. But it still required a diagnosis. Right. So there's no question that the board's authority expanded in the later version. That's why the law was passed. It's clear that the board wanted expanded authority to be able to deny these people that they saw unfit to be released, even though the statute required them to be released. And that goes to my third point as to why we know they used the new standard. The board originally in 1986 and 87, when they saw Mr. Lee set a parole decision allowing a parole release date, the first crime he got 56 months. The next consecutive crimes he got 60 months. Even considering all of his crimes, all four of his crimes, he got a total of about 10 years and had a release date of 1996. The board in doing that looked at the judge's sentence, which was a 20-year sentence with a 10-year mandatory, 120-month minimum, and overrode that and explicitly decided that the minimum wasn't necessary to protect the public or to impose a proper sanction for Mr. Lee. So they had already decided that before the law changed what his sentence would be. And only after the law changed did the new board, the new three-member board, come up with this new expanded authority and then say, no, we think he has a present severe emotional disturbance, and we're going to hold him in until we decide that he doesn't. Even after the diagnosis. But what is his status now? Is he still in prison? Yes, he is, Your Honor. He's had several more hearings since, I assume. Yes, he has. And as in Brown, once a new decision was made, the Oregon courts decided it was moot because this decision wasn't before the court anymore. But again, that decision was overturned. So this case really tracks Brown. And I think from the record we can see that the psychologists decided that Mr. Lee had no present severe emotional disturbance, and the board kept him in anyway. Counsel, would you clarify something in the record for me? Yes. I'm looking at pages 24 and 26. I'm not exactly sure what I'm looking at. But I believe there were some arguments about this in the briefs. The excerpt of the record? Yes. Page 24, it's the findings by the Oregon Board of Parole and Post-Prison Supervision. And it states down there, I'm looking at the large paragraph, the first big paragraph in there, the last sentence says, the board has considered this matter under the laws in effect at the time of the commitment defenses, which would suggest that it was done under the original standard, which would be the appropriate standard. Right. On page 26, I'm not exactly sure what 24 is, and I'm not exactly sure what 26 is, but help me with this. Again, in the last big paragraph there, the last sentence, it says, considering all of the above, the board finds that you suffer from a present severe emotional disturbance such as to constitute a danger to the health and safety of the community. Is that a problem there, that we have a finding that the board is saying that the board finds that you suffer from this? Yes, Your Honor. Doesn't that suggest that this is the newer standard? That's exactly right. Is the standard that is stated there, the severe emotional disturbance such as to constitute a danger to the health and safety of the community, the prior standard or the new standard? That's the old standard. That is the old standard. And also, again, my understanding was that Widener, is that the name of the case? Yes. The board has held that ultimately the board does make the finding, that under the old statute, that the requirement under the old statute is that there be a diagnosis, and that the board make the ultimate decision as to a finding, both with regard to emotional disturbance and severe emotional disturbance and danger. Is that not correct? Am I correct about that? That's what Widener held. So what's wrong? And you keep saying that's what Widener held. Are we not supposed to follow that? Without looking at the ex post facto implications, they said, well, the board could always do this. That was not, that's not. Well, that doesn't make any difference, because as I understand it, ex post facto applies to a legislative decision, and you always have to construe the legislative decision. So if they construed as a matter of state law that the statute at that time permitted this, then that's not an ex post facto problem. I mean, there's a sort of extreme situation in which there could be a due process problem, but it's not an ex post facto problem. The reason this wasn't decided in Brown is because the Brown court didn't look, well, just decided not to decide whether or not the board always had the authority. Instead, the Brown court said even under the old statute, it had to have a diagnosis. This is not a diagnosis because the board decided. So we are still in a situation, there's no reason that we don't apply Widener and then simply decide whether the, essentially the evidence from the record as a whole is that the board was either applying the old standard as construed in Widener or the new standard. That's basically where we are. Is that not right? That's the reason we're here, Your Honor, because the Oregon courts have failed to recognize and remedy the ex post facto problem time and time again, beginning with Fleming v. Board of Parole, Nolth v. Fats, Himes v. Thompson, and Brown v. Palmateer. Your time is up. We'll give you some time for a vote. Thank you. May it please the Court, Carolyn Alexander for State of Oregon. I'd like to start by clarifying some issues. Petitioner has made this issue way more complex than it really is. And Judge Berzon, I think you're on the right track exactly. This case starts with the state court's decision in Widener v. Armenicus. That is the state law issue in this case. Under Widener, it's the board's decision, it's the board's finding whether a potential parolee has a present severe emotional disturbance. But there does need to be a diagnosis of a severe emotional disturbance. Correct. Where is that in this record? Where is the board's finding or the evidence supporting the board's finding? As I understand, it would be a psychiatric diagnosis. Correct. And what we have is a diagnosis exactly to the contrary. We have a diagnosis that says that he had no emotional disturbance. That's not correct, Your Honor. If you'll look at Excerpt of Record 19, that's the psychological evaluation by Dr. Colistro. But it says no mental or emotional disorder. And, Your Honor, you must be looking at the diagnoses. That's on Axis 1 of DSM 3. However, Dr. Colistro goes on to diagnose Petitioner with personality disorder with present severe emotional disturbance. Again, it's a finding that the board let me back up. Present severe emotional disturbance is a legal determination, says Widener, not a medical one. Widener goes on to say, however, there still must be a diagnosis. In later cases that Brown v. Palmatier talks about, this Court's decision in Brown, Christensen v. Thompson and a later case called Newcomb, those cases say it has to be an adequate diagnosis. So that's the state law piece that we have to work with. It has to be a diagnosis and it has to be adequate. There's no state law that says a personality disorder under DSM 4 or the DSM classification system is inadequate or a personality disorder is not good enough. Christensen didn't say that. What Christensen said is the residuals of a personality disorder, when it's apparent from the psychological evaluation that the potential parolee has recovered from his personality disorder, that's not good enough. Newcomb said the same thing. If there's some signs of a personality disorder, that's not good enough. That was the exact issue in Brown v. Palmatier. There was no diagnosis. That was the problem. It was the same exact thing that we see in Newcomb, some signs of emotional disturbance. That's all there was in Brown. However, in Mr. Lee's case, there is a diagnosis. And on page 21 of the excerpt of the record, Dr. Calistro says, based on this information, Mr. Lee continues to present with a severe personality disorder. So that's sufficient for the board to base its finding of present, severe, the emotional disturbance is a current personality disorder that's coded 301. Well, that may be. That, again, is a state law issue, though. It's a diagnosis. State law, the case itself, Mr. Widener was diagnosed with mixed personality disorder with histrionic and antisocial features. The Widener court, in that opinion, said there must be a requisite diagnosis. Mr. Widener's diagnosis was very similar to Mr. Lee's diagnosis. That was sufficient for the state court.  I'm reading now from Widener. The doctor there said he has a significant emotional disturbance. I'm sorry, Your Honor. That's from Widener, correct? Right. So there, I mean, that isn't the same. Here we have the doctor saying he had no emotional disturbance. But, Your Honor, I don't think that's a fair interpretation of the record. Whether all this means anything is another question, but we're dealing with it. Dr. Calistro did not give Mr. Lee an Axis I disorder or diagnosis, but he gave him an Axis II diagnosis. It's a multiaxial system under the DSM classification system. Once you get to Axis I and you say no emotional or mental disturbance or disorder, you're not done. You go on and see if the person that you're evaluating has further diagnoses under different, under Axis II, under a different Axis. You don't stop with that. Aside from this problem, which is hairy enough, what, how do we decide, and I don't want grounders with this, whether, I mean, there is also the possibility that they were deciding under the former statute, but wrongly. In other words, how do we decide whether they were deciding under the former statute incorrectly or under the new statute? Because that's what matters for ex post facto purposes. Well, certainly, Your Honor. I don't think there's any evidence that they applied the new statute. That's what confuses me about Petitioner's argument. The one thing that she said that is interesting and somewhat telling is that whatever the board might have done, the psychiatrist seemed to be operating under the old statute. I mean the new statute, I'm sorry. Right, because what had happened was we had the old statute in 1993. It was amended. So everybody shifted gears, started applying the new statutes until the court said in Meadows, no, no, no, that is an ex post facto problem, and this statute was amended back to the old language. So you do see in these older board orders and the psychological evaluations some confusion about the language. What do you mean? The statute was actually amended after that, aside from the state case law? It was amended in 1993 to the new language. It was then amended back, and that's found in the red brief, and that history is explained, but it was amended back, so it's now the old language once again. So you do see that confusion when you look at these old board orders and the evaluations. However, what Widener says is it doesn't matter if the psychologist uses the magic words of present severe emotional disturbance. That's not a medical term of art. It's a legal term of art. So even if Dr. Callistro uses the language of the old statute, it doesn't matter. Still, the board has always had the authority under both the old statute and the new statute to make the finding of present severe emotional disturbance. That's the board's authority. What this court said in Brown was yes, yes, yes, but you cannot do that when there is no diagnosis whatsoever as there was in Mr. Brown's case. So in order to reach the same result in Brown, this court would have to find that under state law, a diagnosis of a current personality disorder is insufficient under Widener as a matter of state law, and I don't think this court can reach that issue. Can you address the question that I asked counsel about the findings on page 26? Yes. There is a reference in that paragraph to Dr. Callistro, and I see that. Right. What you're looking at, Your Honor, if you go back to page 24 that you referred to first of all, that's the actual order that the board issued deferring parole. Then under our parole system, the inmate can then ask the board to reconsider its decision in an administrative review. That's what 26 is. That's actually the appeal from that order. Basically, that's exactly right. That's the board's reconsideration or the appeal of that order. So what the board is saying at 26 in their administrative review response is, like we said in the order, we considered all the evidence as we are entitled to do under state law. We make the same finding as we did. We don't change our decision. It's interesting enough that this was decided just before Widener. Correct. Like days before. So they didn't have the benefit of the Widener interpretation at the time. Correct. The possible implication of that is that they were deciding under the old statute because they didn't have any reason to think they had the authority to do this under the new statute. Correct. I think that's right, Your Honor. No, you don't think it's right. You probably think the opposite. Well, maybe I'm not understanding your question, then. Apparently I'm not understanding your question. What I'm saying is that this oddly reads as if they had the benefit of Widener, but they did not. Oh, on the administrative review response. Correct. So not having the benefit of Widener, and nonetheless relying on all the evidence and finding something that's contrary, arguably, to the language of the findings, why doesn't that lead us to think that maybe they were deciding under the new statute? Well, the only answer I have for that, Your Honor, is because I've seen the board orders under the new statute, and they do mirror the language in the new statute when they're applying the new statute. When Widener came out and the Attorney General's office considered what to do with that opinion and how to advise the board, we had all of those orders that applied the new statute withdrawn. And we had the board reconsider all of those cases under the old statute. So just as a matter of handling parole board cases for the last six years, I know how these cases went. And presumably the reason you didn't do that here is because it says severe emotional disturbance, not just emotional disturbance. Correct. Correct. I mean, it appears to me when I look at this order and the administrative review response that the board is applying the old statute as it should. And that's, I think, what's a bit confusing for me. I don't see the problem that the court does. It seems like the correct language to me. I'm puzzled by a statement in the Widener case that says although a psychiatric or psychological diagnosis is a prerequisite to the board's consideration whether the statutory criteria have been met, that diagnosis does not dispute itself. Does any kind of a diagnosis satisfy this precondition? It seems like what the prior statute said, it has to be a diagnosis of present severe emotional disturbance. But can you just diagnose it? Well, I think that's the crux of the issue, Your Honor. I think you've nailed it on the head there. That really is the issue is what is the sufficiency of the diagnosis. Well, we know that some diagnoses aren't good enough, such as residuals of personality disorder or some signs of personality disorder, which is, I guess, what we had in Brown. So there's this bizarre line between what's a good enough diagnosis. I don't see that, Your Honor. I think Christiansen goes on to say, and certainly the State cases don't say any diagnosis that's found in the DSM classification system is sufficient. They're not that clear. However, Christiansen says diagnosis is the art or act of identifying a disease from its signs and symptoms. So if you have a psychologist or a psychiatrist who gives the inmate a diagnosis that's current and doesn't say, like Christiansen and Newcomb had a problem with, it's just some residuals or some leftover signs or a few features of a diagnosis, we know that's not sufficient. But if a psychologist says this individual has a personality, mixed personality disorder or antisocial personality disorder or whatever, codes it under the DSM-IV, like in Mr. Lee's case, there's no reason to think that that's not a sufficient diagnosis. Because I'm not totally familiar with the DSM-IV. What is this, what are the two axes? He diagnosed him with two axes. One, he said he had no mental or emotional disturbance, and then he said this other thing. What's that axis? Okay. The DSM-IV system, and just to enlighten the court a bit, I'm also a psychologist as well as a lawyer, so I'm intimately familiar with this document. The DSM system was designed as a research tool for actually psychiatrists. Psychologists now use it to... There was a very interesting New Yorker article recently about the history of the DSM. Oh, I missed that, even though I take the New Yorker off to go back and look. It's an interesting product of a lot of years of research. And it was meant originally to parallel the ICD-9 system that healthcare providers use for classification of physical disease. And that was the whole point of having a cogent system to be able to diagnose mental disorders. It has five axes. The first axes are major mental illnesses, as defined by the DSM. So that includes major depression, schizophrenia, bipolar disorder, those that we recognize as often psychotic, but certainly major mental illnesses we know. Axis 2 includes the personality disorders and mental defects like mental retardation. So they all are coded with a specific code, just like the ICD-9 system. They're all diagnoses. Axis 3, 4, and 5 relate to functioning, physical condition, and so on. But axis 1 and axis 2 concern the diagnosis of mental disorders. It's just that the system has divided them up between what the system calls major mental illness and personality disorders per se. But they're all diagnoses and they're all considered mental illness or mental disorders for the classification system. Judge Feige asked before what he was looking at, and I didn't get to explain that the ER 24 and 26, the first one, 24, is the board action form, the decision, the order of the board deciding to postpone parole. 26 is their decision after an administrative review, when the inmate asks them to look at it for ex post facto problems or other constitutional problems. What we have there is the board saying that they use the old standard, but actually using the new standard. And, again, I think this is clear from the record because, as Judge Feige pointed out, the board says the board finds. And we know that in the history of this statute, the board doesn't have the authority. But that's not true because Widener says otherwise. Your Honor, the reason this is so confusing is because Widener is a subterfuge. Well, that may be, but whatever it is, it's state law and it's binding on us. No, the Oregon parole board did not have the authority to hold an inmate in absent a diagnosis of a present severe emotional disturbance. That's a different issue. That is the reason. So whether the board can ultimately make a finding, Widener is quite clear about, as I understand. They did not have that power. That's the whole reason that the statute was changed in 1993. The board went to the legislature and asked for expansion. Can I ask you one last question? Suppose you were to prevail. What would the remedy be to redo the 1998 hearing, even though there have been several since? The remedy would be release for Mr. Lee because he served the time that was originally set by the board and established a release date of 1996. We can't go back and fix the problem at this point. Can they hold another hearing and find whether he currently has a problem? No, Your Honor, because he would have been released under the former statute because there is a diagnosis of no mental or emotional disturbance and the law says that he would have been released under the former statute and that's what the court found in Brown. Ultimately, it won't make a difference for Mr. Lee because he has a detainer in Washington and an INS detainer. What is his sentence up? What is he getting out in any event? 2011 would be the max date without the good time, yes, and without the detainers. I'd also like to point the court to look at the other cases. Meadows found an ex post facto violation and that was the reason that the board changed the way that they were doing the board orders and saying, oh, we're using the old statute now because Meadows said you cannot use the new statute. Thank you very much. Thank you. Counsel, the case of Lee versus Cherniak is submitted. We will now go on to the two cases denominated OJA versus United States Army Corps, number 03-35877 first.
judges: Hug, Berzon, Bybee